UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
MARK VIRGILIO,

                       Plaintiff,

   -against-

UIPATH INC., JAY MCGRATH, individually
and JOHN MANGAN, individually,

                     Defendants.

---------------------------------------------------------X

Civil Case No:
20-cv-8318

**COMPLAINT**

Plaintiff Demands a Trial by Jury

Plaintiff, MARK VIRGILIO (hereinafter referred to as "Plaintiff" or "VIRGILIO"), by and through his attorneys, DEREK SMITH LAW GROUP PLLC, hereby complains of Defendant UIPATH INC. (hereinafter referred to as "UIPATH" and/or "Defendant"), Defendant JAY MCGRATH (hereinafter, "MCGRATH" and/or "Defendant") and Defendant JOHN MANGAN (hereinafter, "MANGAN" and/or "Defendant"), (collectively, "Defendants"), upon information and belief, as follows:

## NATURE OF CASE

1. This action is brought to remedy, *inter alia*, the unlawful discrimination and sexual harassment, sexual assault, retaliation and wrongful termination to which Defendants subjected Plaintiff on the basis of his sex/gender with respect to the conditions and privileges of his employment, along with the hostile work environment, retaliation that Plaintiff faced as a result of his opposition to these unlawful practices, and his wrongful termination at the hands of Defendants as a result of his opposition to these unlawful practices. Through their unlawful and discriminatory

conduct, Defendants violated, *inter alia*, Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL"), and The New York City Human Rights Law ("NYCHRL") and the Massachusetts Fair Employment Practices Act ("FEPA") .

2.   Plaintiff seeks injunctive and declaratory relief with respect to each Claim, as well as, monetary relief, including but not limited to: compensatory and punitive damages; attorney's fees and the costs associated with this action; together with any and all other appropriate legal and equitable relief pursuant to applicable state and federal laws.

## JURISDICTION AND VENUE

3.   This Court has jurisdiction based on 28 U.S.C. § 1331 and supplemental jurisdiction over the state and city law claims under 28 U.S.C. § 1367.

4.   Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under Title VII. The Court also has jurisdiction pursuant to 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

5.   Additionally, the Court has supplemental jurisdiction under the State laws.

6.   Around December 19, 2019, Plaintiff submitted a Charge with the U.S. Equal Employment Opportunity Commission ("EEOC"). The Federal Charge Number is 520-2020-01607.

7.   The Complaint initiating this matter was filed before the expiration of the deadline stated in the Notice of Right To Sue letter issued by the EEOC.  Therefore, all administrative remedies have been exhausted and Title VII statutory prerequisites have been satisfied.

8.   Venue is proper in that acts or omissions giving rise to the claims arose within the Southern District of New York and the Plaintiff's claims arise out of Defendant UIPATH's business dealing

at their offices and headquarters in New York County, New York.

## PARTIES

9. Plaintiff MARK VIRGILIO (hereinafter referred to as "Plaintiff" and/or "VIRGILIO") is seeking damages to redress the injuries Plaintiff has suffered as a result of, *inter alia*, being discriminated against by his employer on the basis of his sex/gender, together with being subjected to sexual assault, a hostile work environment and retaliation.

10. Plaintiff is an individual male who is a resident of the State of New Jersey, Camden County.

11. At all times material, Defendant UiPath, Inc. (hereinafter referred to as "UiPath") is a foreign business corporation duly existing by the virtue and laws of the State of Delaware that conducts business in the State of New York and is licensed to do so by the State of New York.

12. At all times material, UiPath is a robotic software automation company with its headquarters in New York County, New York.

13. At all times material, Defendant employed Plaintiff as a Global Account Manager who engaged in sales.

14. At all times material, Defendant JOHN MANGAN was the Vice President of Sales, Banking, Financial Services and Insurance and held supervisory authority over Plaintiff, controlling many of Plaintiff's job duties. Defendant MANGAN held the power to hire and fire Plaintiff as well as control over other material aspects of Plaintiff's employment.

15. At all times material, JAY MCGRATH (hereinafter referred to as "McGrath") was the Area Vice President of Financial Services and held supervisory authority over Plaintiff, controlling many of Plaintiff's job duties. Defendant MCGRATH held the power to hire and fire Plaintiff as well as control over other material aspects of Plaintiff's employment.

3

## MATERIAL FACTS

16. Defendant hired Plaintiff around November 26, 2018 as the Global Account Manager, which is a sales position working out of Defendant UIPATH's New York City office.

17. On or about May 14, 2019, Plaintiff accompanied Defendant MANGAN on a business trip to Boston, to attend a sales meeting along with their colleagues Christopher Sacco, Steven Chu and Jeffrey Truesdale.

18. Plaintiff arranged hotel reservations at a significantly discounted rate at an upscale hotel called The Row Hotel in Somerville, MA near Boston through Plaintiff's brother-in-law, Jeffrey Malloy, who was the general manager at La Cucina Restaurant which is connected to The Row Hotel.

19. About a week prior to the trip Defendant MANGAN contacted Plaintiff and informed Plaintiff that Defendant MANGAN had booked a room for himself at another hotel and instructed Plaintiff to cancel Defendant MANGAN's discounted booking at The Row Hotel.

20. On or about May 14, 2019, Plaintiff, Defendant MANGAN, Messrs. Sacco, Chu, Truesdale and Malloy met for dinner at La Cucina.

21. In a conversation at the dinner Defendant MANGAN stated that instead of staying at The Row Hotel he was staying at a hotel in Boston's South End[1] called the Staypinapple Hotel.[2]

22. Sacco asked Defendant MANGAN if he was aware that he was staying in a hotel with an attached bar and nightclub that is popular among homosexual men.

---

[1] Boston's South End is a popular neighborhood among the area's homosexual community.
[2] The Staypinapple Hotel in Boston is attached to a popular gay nightclub and bar.

23. In response, Defendant MANGAN stated that he was aware of the hotel's popularity among homosexual men and that Defendant MANGAN had seen men "hooking up" in the bar at the Staypinapple Hotel.

24. During the dinner, Defendant MANGAN consumed numerous alcoholic beverages and became visibly intoxicated.

25. At the end of dinner, Defendant MANGAN demanded that Plaintiff sign Defendant MANGAN's credit card receipt because he was too intoxicated to be able to read and sign the receipt.

26. As the evening progressed, Defendant MANGAN continued to consume alcohol and became extremely intoxicated.

27. Around midnight, Plaintiff called a car via the Uber ride hailing app for Defendant MANGAN to take him back to his hotel in Boston's South End.

28. Upon arrival the Uber driver apparently observed that Defendant MANGAN was intoxicated and refused to take Defendant MANGAN to the Staypinapple Hotel.

29. Plaintiff attempted to book a room for Defendant MANGAN in The Row Hotel, but there was no availability.

30. As a last resort, Plaintiff and Mr. Malloy guided Defendant MANGAN to Plaintiff's hotel room and Plaintiff allowed Defendant MANGAN to sleep on the couch in Plaintiff's hotel room.

31. Plaintiff gave Defendant MANGAN a pillow and the comforter off of Plaintiff's bed and Plaintiff laid down to sleep in the bed with only a sheet as covers.

32. At about 4:30 a.m., Defendant MANGAN got up from the couch and began pacing around the hotel room.  Plaintiff, half-asleep heard Defendant MANGAN walking around the room.

33. Defendant MANGAN then walked over to the bed where Plaintiff was laying and climbed on top of Plaintiff mounting Plaintiff with Defendant MANGAN's arms and legs straddling Plaintiff's body.

34. Defendant MANGAN laid on top of Plaintiff with Defendant MANGAN's face near the back of Plaintiff's head and Defendant MANGAN's crotch in contact with Plaintiff's buttocks.

35. Plaintiff, startled and now fully awake shouted at Defendant MANGAN to get up and get off of Plaintiff and shoved Defendant MANGAN off of Plaintiff.

36. Defendant MANGAN climbed off of Plaintiff and momentarily stood over Plaintiff staring at him.

37. Defendant MANGAN then turned and entered the bathroom where he stayed for two or three minutes before exiting the bathroom.

38. Upon leaving the bathroom, Defendant MANGAN returned to Plaintiff's bed and immediately mounted Plaintiff again with Defendant MANGAN's arms and legs straddling Plaintiff's body.

39. Now for the second time, Defendant MANGAN laid on top of Plaintiff with Defendant MANGAN's face near the back of Plaintiff's head and Defendant MANGAN's crotch in contact with Plaintiff's buttocks.

40. Plaintiff again shoved Defendant MANGAN off of Plaintiff's body shouting "What are you doing John?! Get off of me!"

41. In mounting Plaintiff twice while he lay in bed, Defendant MANGAN attempted to have unwelcome, uninvited and unwanted sexual relations with Plaintiff.

42. This time Defendant MANGAN refused to leave Plaintiff's bed.

43. In shock after just having been sexually assaulted by his boss, Plaintiff he left the hotel room and remained in the lobby of the hotel for several hours until approximately 8:45 AM.

44. Plaintiff returned to his hotel room at about 9:00 A.M. to participate in a scheduled telephonic conference call for work.

45. When Plaintiff returned, Defendant MANGAN was still asleep in Plaintiff's bed.

46. Defendant MANGAN woke up during the conference call and began to disrupt the conference call. Plaintiff muted the call and told Defendant MANGAN to exit the room so that Plaintiff could complete the conference call.

47. Shortly thereafter Defendant MANGAN texted Plaintiff and demanded that Plaintiff come meet Defendant MANGAN for breakfast.

48. Plaintiff refused to meet Defendant MANGAN for breakfast.

49. Both Plaintiff and Defendant MANGAN where scheduled to stay in Boston for an additional day, but Plaintiff left early as a result of his discomfort and fear of his boss, Defendant MANGAN, following Defendant MANGAN's sexual assault and battery of and attempted sexual relations with Plaintiff.

50. The next day, on or about May 15, 2019, Plaintiff complained to Defendant MANGAN and advised that he was upset and offended by Defendant MANGAN's sexual assault of Plaintiff in his hotel room.

51. Defendant MANGAN became upset and told Plaintiff that he was "**EXAGGERATING**" and "**MAKING TOO MUCH OF IT**."

52. On or about May 22, 2019, both Plaintiff and Defendant MANGAN were away on a sales training in Dallas, TX. Defendant MANGAN asked Plaintiff if he was staying at the hotel where the company meetings were held. Plaintiff replied that he was staying at the hotel along with everyone else attending the meeting. Defendant MANGAN then laughingly replied "**I WASN'T SURE IF YOU NEEDED TO STAY ON MY COUCH TONIGHT**."

53. As Plaintiff, who was embarrassed and mortified by Defendant MANGAN's behavior, mentally processed the sexual assault and Defendant MANGAN's unapologetic and haughty response Plaintiff was extremely uncomfortable working with Defendant MANGAN. Shortly thereafter Plaintiff asked to be transferred to another team within the company.

54. Around June 2019 Defendant MCGRATH informed Plaintiff that if he wanted to leave Defendant MANGAN's team, Plaintiff would need to obtain Defendant MANGAN's approval before being transferred.

55. On or about July 16, 2019, while at a company function and cocktail reception Plaintiff approached Defendant MANGAN to quietly discuss the possibility of being transferred to a different team. Defendant MANGAN immediately became irate in response to Plaintiff's request and started berating and shouting at him in front of their colleagues.

56. The following evening Defendant MANGAN demanded that Plaintiff attend a dinner with Defendant MANGAN and the rest of their team. While at the dinner Defendant MANGAN continued to insult and berate Plaintiff by calling him a "**PUSSY**" and saying that he "**PUSSED OUT**" on Defendant MANGAN for wanting to leave Defendant MANGAN's team.

57. On or about July 17, 2019, both Plaintiff and Defendant MANGAN along with other UiPath employees attended a team outing. There, Defendant MANGAN continuously insulted and embarrassed Plaintiff because of his previous complaint of sexual assault.

58. In addition to ridiculing Plaintiff, Defendant MANGAN assigned Plaintiff required tasks that were unrealistic and impossible to meet.

59. In retaliation for Plaintiff's objections and complaint about Defendant MANGAN's sexual assault Defendants placed Plaintiff on a performance improvement plan with clearly unattainable goals.

60. Defendant MANGAN stonewalled Plaintiff's attempts to transfer to a different team and trapped him in his position on Defendant MANGAN's team despite the sexual assault, humiliation, discomfort, and ongoing retaliation Defendant MANGAN forced Plaintiff to endure.

61. Around early October, 2019 in a conversations with coworkers, Todd  McCabe and Kirk Neil, Plaintiff shared that Defendant MANGAN sexually assaulted Plaintiff earlier that year in Boston and belittled and derided Plaintiff for complaining about it.

62. Mr. Neil was so upset with Plaintiff's situation that Mr. Neil took it upon himself to personally report the sexual assault by Defendant MANGAN against Plaintiff to Defendant UIPATH's Global Head of Human Resources, Mr. Marius Istrate on around October 16, 2019 while Messrs. Neil and Istrate attended a conference in Las Vegas, NV.

63. Defendant UIPATH took no action to contact Plaintiff to investigate the sexual assault after it was reported to Mr. Istrate by Mr. Neil.

64. Around October 22, 2019 Plaintiff complained to Defendant's HR department that Defendant MANGAN was retaliating against Plaintiff because Plaintiff rebuffed Defendant MANGAN's earlier attempted sexual relations, resisted Defendant MANGAN's sexual assault in May and because Plaintiff complained to Defendant MANGAN about the sexual assault.

65. Plaintiff gave a detailed description of the sexual assault and the retaliation to Defendant that included photos, a list of witnesses and documentation of the retaliation.

66. Despite the detailed description of the sexual assault and supporting evidence Plaintiff provided to Defendant, shockingly Defendant told Plaintiff that there was "no evidence" to support Plaintiff's complaint of sexual assault and retaliation.

67. Defendant took no meaningful investigatory action in response to Plaintiff's complaint about sexual assault and retaliation.

68. Around November 3, 2019 Defendant UIPATH's CEO held a company-wide conference call wherein Mr. Dines expressly instructed UIPATH employees to report any and all instances of bad company culture or anything wrong at UIPATH.

69. In response, shortly thereafter, Plaintiff emailed Mr. Dines directly and informed him of the sexual assault by Defendant MANGAN and the subsequent retaliation from Defendant MANGAN.

70. Mr. Dines did not reply to this email.

71. The following day, Defendant UIPATH's VP of Operations and Strategy, Mr. Brandon Deer emailed Plaintiff stating that all appropriate actions had been taken by HR and that Defendant UIPATH considered Plaintiff's complaint of sexual assault and retaliation "closed."

72. Defendant failed to take any kind of substantive remedial action to address Plaintiff's complaint about sexual assault and retaliation.

73. Defendant MCGRATH required that Plaintiff keep working under the direct supervision of Defendant MANGAN despite the fact that Defendant MANGAN sexually assaulted Plaintiff and retaliated against Plaintiff for complaining about the assault and attempting to switch to another team so he would no longer have to report to his sexual assaulter.

74. Plaintiff informed Defendant that Plaintiff could no longer keep working under Defendant MANGAN and that is was outrageous and completely unacceptable for Defendant to expect that Plaintiff continue working under Defendant MANGAN after he sexually assaulted and retaliated against Plaintiff.

75. In response Defendant MCGRATH informed Plaintiff that the only option would be for Plaintiff to move off of Defendant MANGAN's team to take over much less lucrative leftover accounts that other sales personnel rejected.

76. Plaintiff expressed frustration to Defendant that this alternate option would drastically reduce Plaintiff's salary.

77. Defendant MCGRATH refused to give any credence to Plaintiff's complaints and refused to take any remedial or disciplinary action against Defendant MANGAN for the sexual assault and subsequent retaliation against Plaintiff.

78. Prior to Defendant MANGAN's sexual assault and retaliation against Plaintiff, Plaintiff's annual salary and commissions for the accounts Plaintiff handled while working under Defendant MANGAN was approximately $320,000. However, after Plaintiff's complaints about the sexual assault by Defendant MANGAN and the subsequent retaliation Plaintiff's income was reduced to around $160,000.

79. After Plaintiff complained about Defendant MANGAN's sexual assault, Defendants placed Plaintiff on a performance improvement plan, and removed Plaintiff's most lucrative accounts thereby making it impossible for Plaintiff to satisfy the performance improvement plan.

80. Plaintiff complained to Defendants that he was being retaliated against for reporting, objecting to and complaining about Defendant MANGAN's sexual assault of Plaintiff, and for retaliatory actions taken against Plaintiff by Defendant MANGAN.

81. In response to Plaintiff's expressed frustration Defendants informed Plaintiff that HR would contact him to offer a separation agreement with a severance package.  However shortly thereafter Defendants reneged on this representation and refused to engage in negotiations regarding a separation agreement.

82. At that time Plaintiff held about $1.2 million in stock options in Defendant's company that would be forfeited if Plaintiff's employment with the company ended.

83. Plaintiff was faced with the decision to either keep working under the boss who sexually assaulted him and subsequently engaged in obvious retaliation in response to Plaintiff's complaints and attempts to leave Defendant MANGAN's team, leave Defendant MANGAN's team and take over leftover undesirable and unlucrative accounts, or leave the company and forfeit over a million dollars in stock options.

84. Around December 18, 2019 Defendants MANGAN and MCGRATH forced Plaintiff in to leaving the company by removing all possibilities for Plaintiff to earn commissions.

85. On the same day that Plaintiff was forced to resign, Defendant MANGAN began disparaging, defaming and slandering Plaintiff to clients and coworkers.

86. Defendants discriminated against Plaintiff because of his sex/gender, and because he complained of and opposed the unlawful conduct of Defendant related to the above protected classes.

87. As a result of Defendant's actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

88. As a result of Defendant's discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer severe emotional distress and physical ailments including depression, anxiety, sleeplessness, headaches, hair loss and hypertension.

89. As a result of Defendant's unlawful and discriminatory actions, Plaintiff has endured irreparable damage to his professional reputation.

90. As a result of the acts and conduct complained of herein, Plaintiff will suffer the loss of income, the loss of a salary, loss of commissions, bonuses, benefits and other compensation, which such

employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting condition.

91. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against Defendant.

92. The above are just some of the examples of unlawful, discriminatory, and retaliatory conduct to which Defendant subjected Plaintiff.

93. Plaintiff claims alternatively (in the event Defendant Claims so or that an agency or Court determines) that Plaintiff is an Independent Contractor, and Plaintiff makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors.

94. The Defendants' conduct constitutes a continuing violation. Plaintiff claims a continuous practice of discrimination and claims a continuing violation. Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

95. Plaintiff hereby demands reinstatement to his original position with all attendant benefits that would have accrued during Plaintiff's separation with Defendant UIPATH.


**CAUSES OF ACTION**

**AS A FIRST CAUSE OF ACTION
FOR DISCRIMINATION UNDER
TITLE VII
(NOT AGAINST INDIVIDUAL DEFENDANTS)**

96. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

97.  Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a) [Section 703]
provides that it shall be an unlawful employment practice for an employer: "(1) to fail or refuse to
hire or to discharge any individual, or otherwise to discriminate against any individual with respect
to his compensation, terms, conditions, or privileges of employment, because of such individual's
race, color, religion, sex, or national origin; . . ."

98.  Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e *et
seq.,* by subjecting Plaintiff to discrimination on the basis of his sex/gender, together with causing
a hostile work environment based on the same.

99.  Defendant UIPATH violated the above and Plaintiff suffered numerous damages as a result.

## AS A SECOND CAUSE OF ACTION
## FOR RETALIATION UNDER
## TITLE VII
## (NOT AGAINST INDIVIDUAL DEFENDANTS)

100.    Plaintiff repeats, reiterates and realleges each and every allegation made in the above
paragraphs of this Complaint as if more fully set forth herein at length.

101.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides
that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any
of his employees . . . because [s]he has opposed any practice made an unlawful employment
practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated
in any manner in an investigation, proceeding, or hearing under this subchapter."

102.    Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e *et
seq.,* by retaliating against Plaintiff with respect to the terms, conditions or privileges of
employment because of his opposition to the unlawful employment practices of Defendants.

103.    Defendant UIPATH violated the above and Plaintiff suffered numerous damages as a result.

### AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION
### UNDER NEW YORK STATE LAW
### (AGAINST ALL DEFENDANTS)

104. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

105. New York State Executive Law § 296 provides that, "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

106. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of his sex, together with sexual harassment, sexual assault and causing a hostile work environment.

107. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

### AS A FOURTH CAUSE OF ACTION
### FOR AIDING AND ABETTING UNDER
### NEW YORK STATE LAW
### (AGAINST ALL DEFENDANTS)

108. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

109. New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

110. Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing the discriminatory behavior as stated herein.

## AS A FIFTH CAUSE OF ACTION
## FOR RETALIATION UNDER
## NEW YORK STATE LAW
## (AGAINST ALL DEFENDANTS)

111. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

112. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

113. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

## AS A SIXTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## MASSACHUSETTS LAW M.G.L. c. 151B
## (AGAINST ALL DEFENDANTS)

114. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

115. Plaintiff was treated differently as to the terms and conditions of his employment based upon the Plaintiff's sex/gender and the sexual assault and harassment of him by Defendant MANGAN, an employee of the Defendant UIPATH.

116. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of his sex, together with sexual harassment, sexual assault and causing a hostile work environment.

117. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Massachusetts General Law Section 151B.

### AS A SEVENTH CAUSE OF ACTION
### FOR RETALIATION UNDER
### MASSACHUSETTS LAW M.G.L. Section 151B
### (AGAINST ALL DEFENDANTS)

118. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

119. The Plaintiff was treated differently as to the terms and conditions of his employment based upon his sex/gender and his reporting and resisting of sexual harassment and sexual assault.

120. Plaintiff was retaliated against by management of the Defendant UIPATH based upon his sex/gender and for having reported said sexual harassment and sexual assault.

121. Plaintiff was retaliated against and constructively discharged from his employment, at least in part, based upon his sex/gender and reporting and resisting of said sexual harassment and assault by Defendant MANGAN.

122. This environment and the conditions imposed upon the Plaintiff by Defendants related to and adversely affected the terms and conditions of his employment.

123. The Plaintiff was severely and adversely affected by the Defendants' conduct and the failure of the Defendants to take reasonable steps to ensure that this discriminatory conduct, retaliation and harassment would not continue.

124. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Massachusetts General Law Section 151B.

## AS AN EIGHTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE
## <u>(AGAINST ALL DEFENDANTS)</u>

125. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

126. The Administrative Code of City of NY §8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienate or citizenship status of    any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

127. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, by creating and maintaining discriminatory working conditions and a hostile work environment, and otherwise discriminating against Plaintiff because of her sex and gender.

128. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York City Administrative Code Title 8.

129. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A NINTH CAUSE OF ACTION**
**FOR RETALIATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**(AGAINST ALL DEFENDANTS)**

130. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

131. The New York City Administrative Code Tide 8, §8-107(1)(e) provides that it shall be unlawful discriminatory practice: "For an employer . . , to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . . "

132. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Tide 8, §8-107(1) (e) by discriminating against Plaintiff because of her opposition to the unlawful employment practices of Plaintiff's employer.

133. Defendants violated the above and Plaintiff suffered damages as a result.

**AS A TENTH CAUSE OF ACTION**
**FOR AIDING AND ABETTING UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**(AGAINST ALL DEFENDANTS)**

134. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as is fully set forth at length.

135. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

136. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

137. Defendants violated the above and Plaintiff suffered damages as a result.

## AS AN ELEVENTH CAUSE OF ACTION
## FOR RETALIATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## (AGAINST ALL DEFENDANTS)

138. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

139. Section 8-107(19), entitled Interference With Protected Rights provides that "It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section."

140. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A TWELVTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE
## (AGAINST ALL DEFENDANTS)

141. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as is fully set forth at length.

142. Section 8-107(13) entitled Employer Liability For Discriminatory Conduct By Employee, agent or independent contractor provides "An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of

any provision of this section other than subdivisions one and two of this section." b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where: (1) the employee or agent exercised managerial or supervisory responsibility; or (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

143. Defendants violated the above and Plaintiff suffered numerous damages as a result.

### AS A THIRTEENTH CAUSE OF ACTION FOR
### ASSAULT AND BATTERY
### (AGAINST ALL DEFENDANTS)

144. Plaintiff repeats, reiterates and re-alleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

145. That the aforesaid occurrences and resultant injuries to Plaintiff were caused by reason of the intent, carelessness and recklessness of Defendants, their agents, servants and/or employees, suddenly and without provocation did physically assault and batter Plaintiff herein.

146. Defendants violated the above and Plaintiff suffered numerous damages as a result.

21

**WHEREFORE** As a result of Defendants' acts, Plaintiff has been damaged in an amount to be determined at the time of trial.

**WHEREFORE**, Plaintiff demands judgment against all Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

**<u>JURY DEMAND</u>**

Plaintiff demands a jury trial on all issues to be tried.

Dated:   New York, New York
        October 6, 2020

                              DEREK SMITH LAW GROUP, PLLC
                              Attorneys for Plaintiff

                 By:       /s/ Seamus Barrett
                         Seamus Barrett, Esq.
                         One Penn Plaza, Suite 4905
                         New York, New York 10119
                         (212) 587-0760